**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| MARIA TEJADA | § | |
| | § | |
| V. | § | A-12-CV-997-DAE |
| | § | |
| THE TRAVIS ASSOC. FOR THE BLIND | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE DAVID A. EZRA
        SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion for Summary Judgment (Dkt. No. 16); Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. No. 19); Defendant's Reply (Dkt. No. 23); and Plaintiff's Sur-Reply (Dkt. No. 24). The District Judge referred the above-pleadings to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

### I.   FACTUAL BACKGROUND

Plaintiff Maria Tejada ("Tejada") is legally blind and was employed by The Travis Association for the Blind ("TAB"), a non-profit entity that provides employment, training, and education to blind and visually-impaired individuals. Defendant's Ex. A, Mayfield Affidavit. Tejada was employed at TAB from December 2006 until June 2, 2011, when she claims she was constructively terminated. Defendant's Ex. C, Tejada Depo. at 86-87.

Tejada was originally hired to sew buckles on rigger belts for United States Army uniforms in the Belts Department. *Id.* at 86-87. Her original supervisor was Sylvia Gonzales. *Id.* Tejada then moved to the Binders Department, where her supervisor was Sal Guzman. *Id.* at 87-88. In September of 2007, Guzman, who is also blind, made sexually inappropriate comments to Tejada.

Defendant's Ex. A; Defendant's Ex. C at 137-139. The TAB investigated Tejada's complaint and terminated Guzman.  Defendant's Ex. C at 140-141; Defendant's Ex. B-2.  After Guzman's termination, Tejada was assigned Laura Casias as her supervisor in the Binders Department. Defendant's Ex. C at 88.  Tejada was later assigned to the Trouser Belt Department under the supervision of Irene Pineda.  *Id.* at 89-90.  She later moved to the Chin Straps Department under the supervision of Dolores Hernandez and then to the Soap Department also under the supervision of Dolores Hernandez.  *Id.*  Corrine Randall was the  Production Manager and supervised the various departments.  Randall's supervisor was the Executive Director, Jerry Mayfield. Plaintiff's Ex 3, Tejada Declaration.

On November 17, 2007, Tejada was placed in a different department, Binders, because some equipment was down.  She became upset and walked off the job.  Defendant's Ex. B-1, TAB-MT 45. Though  not subjected to any formal discipline, Tejada was counseled that if she walked off the job again she could be suspended for three days.  *Id.*  In May of 2009, Tejada and co-worker Clara Benavides were involved in a confrontation in which Benavides is alleged to have threatened Tejada, telling her to "clock out and step outside."  Defendant's Ex. B-1, TAB-MT 44.  Tejada complained to management and Benavides was warned that future threats could subject her to immediate termination.  Defendant's Ex. F, Benavides Depo. at 15:18-22.

On April 28, 2010, one of Tejada's coworkers, George Adams, complained that Tejada was harassing him by talking about him pejoratively to other employees.  Plaintiff's Ex. 3; Defendant's Ex. B-1, TAB-MT 41.  On April 30, 2010, Corrine Randall warned Tejada that if she continued to make negative comments about coworkers to other coworkers, that she would be suspended for three days.  *Id.,*TAB-MT 40.  Tejada informed Randall that she was taking the three-day suspension.  *Id.* Randall explained that she was not suspending Tejada, but Tejada clocked out and left anyway.  *Id.* Tejada acknowledged that she knew she was not being suspended at that time.  Defendant's Ex. C

at 127.  In response, on May 5, 2010, Randall explained to Tejada that she could not "suspend herself," and suspended Tejada for three days without pay for walking out and for missing work from April 30, 2010, to May 4, 2010.  Defendant's Ex. B-1, TAB-MT 37.

On August 19, 2010, Binders Department employee Clara Benavides complained that Tejada was making comments about Mexican immigrants taking jobs away from people from the United States, making national origin comments about Benavides and her husband, laughing in Benavides' face, mimicking Benavides, and telling other employees that Benavides was "no one."  Defendant's Ex. B-1, TAB-MT 35.  Jerry Mayfield spoke with Tejada about this complaint, gave her a verbal warning, and gave her coaching about treating others with respect.  Defendant's Ex. E at 94-96, 100; Defendant's Ex. B-1, TAB-MT 33.  On the same date, Tejada complained to her supervisor Irene Pinieda, that Benavides had called Tejada a name while walking by her.  Defendant's Ex. B-1, TAB-MT 36.

On October 12, 2010, Tejada filed a discrimination charge with the EEOC alleging that she was being retaliated against for her 2007 complaint against Guzman.  Plaintiff's Ex. 19.  In her charge she stated that "On or about August 23, 2010, I was told that management had received complaints from my coworkers that I was harassing them.  A management official told me what happened to Sal Guzman could happen to me.  I believe my employer is retaliating against me . . . ." *Id.*  On November 17, 2010, Quality Control employee Sharlene Ervin reported that she received an anonymous call stating that Tejada was criticizing Quality Control employees by saying that they "get paid a lot of money just to stand around and do nothing."  Defendant's Ex. B-1, TAB-MT-32.  Because the complaint was anonymous, the TAB took no action against Tejada.  Defendant's Ex. F, Penz. Depo. at 92.

In mid-May 2011, Tejada's co-worker Ricardo Piedra was called to Mayfield's office over the loudspeaker.  Plaintiff's Ex. 3, Tejada Declaration.  Tejada alleges that after this, Piedra began

3

avoiding her like the other employees did. On May 16, 2011, employee Jose "Tony" Garza complained that Tejada harassed him and other employees by cursing at them verbally and in sign language, laughing at employees, and giving them dirty looks. Defendant's Ex. B-1, TAB-MT 31. TAB took no action against Tejada. *Id.* On May 20, 2011, Tejada was given a written warning and placed on probation for a 60 days for attendance issues. Defendant's Ex. B-1, TAB-MT 30. On June 1, 2011, TAB employee Andy Mireles reported that Tejada angrily pushed him out of the way when he accidentally tapped her with his cane. Defendant's Ex. B-1, TAB-MT 29. On June 2, 2011, Tejada resigned from TAB without giving notice. Defendant's Ex. C at 70-71.

## II. PROCEDURAL BACKGROUND

On March 12, 2012, Tejada filed a Charge of Discrimination with the EEOC alleging she was harassed and retaliated against by Mayfield and Randall after filing charges and complaints against the TAB. Plaintiff's Ex. 4. She alleged she was constructively discharged on June 3, 2011. The EEOC issued a right to sue letter on July 31, 2012. On October 29, 2012, Tejada filed this lawsuit alleging retaliation, a retaliatory hostile work environment, and constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2. Complaint at ¶ 8. Tejada has since withdrawn the retaliation claim, Response at 1 n. 1, and her remaining claims are therefore that she was constructively discharged, and that TAB created or permitted a retaliatory hostile work environment.

## III. STANDARD OF REVIEW

Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A factual dispute is 'genuine' where a reasonable party would return a verdict for the non-moving party." *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 282 (5th Cir. 2003) (citation omitted). In considering a summary judgment motion, courts view the evidence in the light most

4

favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003).

## IV.   ANALYSIS

### A.   Retaliatory Hostile Work Environment

Tejada asserts that she is pursuing a cause of action for "retaliatory hostile work environment." As pointed out by the TAB, the Fifth Circuit has never recognized a claim for "retaliatory hostile work environment." *Thomas v. City of Shreveport*, No. 06–1078, 2008 WL 4291211, at *11 (W.D. La. Sept.15, 2008). In the two instances in which it has been presented with this issue, the Fifth Circuit has declined to reach it, each time finding that the plaintiff failed to establish a prima facie case of retaliatory hostile work environment, even if such a claim were recognized. *See Fallon v. Potter*, 277 F. App'x 422, 424 & n. 3 (5th Cir. 2008) (unpublished); *Bryan v. Chertoff*, 217 F. App'x 289, 293 (5th Cir. 2007) (unpublished). In *Bryan* the court did note that "[a]t least the Second, Sixth, Seventh, Ninth, and Tenth Circuits have adopted this cause of action." *Bryan*, 217 F. App'x at 293 n. 3 (citing cases).[1]

The Court will leave for the Fifth Circuit the question of whether such a cause of action exists, and will assume for the purposes of this motion that Tejada may pursue a "retaliatory hostile work environment" theory. *See Griffin v. Texas Department of State Health Services*, 2011 WL 759476 (S.D. Tex. 2011) (unpublished). As for the standard to apply to determine whether a prima facie claim has been stated, in *Fallon* the court did not balk at the district judge using that same

---

[1] Notwithstanding this, some trial courts have granted summary judgment on the basis that the Fifth Circuit has failed to recognize a claim for retaliatory hostile work environment. *See e.g., Minor v. University of Texas Southwestern Medical Center*, 2013 WL 3477223 (N.D. Tex. 2013) (slip copy).

standard used for retaliation claims to analyze a retaliatory hostile work environment claim. *Fallon*, 277 Fed.Appx. 422. Further, the circuits that have recognized the claim have taken a similar approach. For instance, the Sixth Circuit "consider[s] a retaliatory hostile work environment claim as a variety of retaliation." *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (stating that the prima facie elements for this claim are a modified version of the elements recognized in a typical retaliation claim).

To establish a prima facie case of a hostile work environment, the Fifth Circuit requires that a plaintiff show: (1) she belongs to a protected group; (2) she was subjected to unwelcomed harassment; (3) the harassment complained of was based on a protected characteristic; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). In *Harris v. Forklift Systems, Inc.*, the Supreme Court stated that Title VII prohibits "requiring people to work in a discriminatorily hostile or abusive environment." 510 U.S. 17, 21 (1993). In a claim involving an allegedly *retaliatory* hostile environment (as opposed to a *discriminatory* hostile environment), the first and third elements have a different focus. In the retaliation context, the first element would require proof that the plaintiff had engaged in protected activity, and the third element would require demonstration of a causal connection between the harassment and the protected activity. The Court will analyze whether Tejada has stated a prima facie case of retaliatory hostile environment claim using these modified factors. If Tejada establishes a prima facie case, the burden will shift to the TAB to proffer a legitimate, nonretaliatory reason for its actions. *Burlington N. & Santa Fe Rwy. Co. v. White*, 548 U.S. 53, 68 (2006). If it meets this burden, the burden shifts back to Tejada, who has the ultimate burden of showing that the reasons given were a mere pretext for retaliation.

TAB asserts that the Court need not even reach the question of whether Tejada has stated a prima facie case, because it contends her claim is untimely. The court disagrees. With a hostile work environment claim, if the harassment has been a continuing action, the plaintiff need only demonstrate one contributing act occurred within the filing period for a court to consider the "entire time period of the hostile environment . . . for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002); *Barnes v. McHugh*, 2013 WL 3561679 (E.D. La. 2013) (slip copy). There are several factors pertinent to whether alleged harassing actions constitute a continuing violation. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 475 (5th Cir. 1989); *Berry v. Bd. of Supervisors of La. State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983). Acts constitute a continuing violation when they involve the same type of discrimination, recur frequently, and trigger the employee's awareness of a duty to assert her rights, or cause her adverse consequences. *Waltman*, 875 F.2d at 475; *Berry*, 715 F.2d at 981. Tejada relies on several events of alleged harassment which occurred within the limitations period: Mireles' complaint about her on June 1, 2011, being placed on probation for attendance problems on May 20, 2011, Garza's May 16, 2011 complaint about her, and Piedra not speaking with her after being called into Mayfield's office in mid-May 2011. For the sake of this analysis, the Court will therefore assume that this is sufficient to invoke the continuing violation doctrine, thereby allowing consideration of all of the allegedly harassing actions that took place earlier than May 2011. Even considering the full panoply of alleged acts of harassment Tejada identifies, Tejada has failed to demonstrate several elements of a prima facie case, and there is no fact question precluding summary judgment on these elements.[2]

---

[2]Tejada alleges two acts of protected activity. First, she made a complaint against Sal Guzman in 2007. Second, she filed an EEOC charge alleging she had been retaliated against in August of 2010. Plaintiff's Ex. 17. The parties do not dispute that Tejada engaged in a protected activity when she complained about Guzman in 2007, and filed an EEOC charge in 2010.

First, there is no evidence that any of the allegedly harassing acts were causally connected to Tejada engaging in protected activity in 2007 and 2010.  "[A]'causal link' is established when the evidence demonstrates that the [adverse action] was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 684 (5th Cir. 2001) (citation omitted).  Most courts consider three factors to help determine whether a causal link has been demonstrated at the prima facie case stage: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures in taking action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act. *See Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 507–08 (5th Cir.1994) (citing *Jenkins v. Orkin Exterminating Co.*, 646 F.Supp. 1274, 1277 (E.D. Tex.1986)).

In some instances, temporal proximity alone is enough to create a fact question on causation, if the plaintiff shows "[c]lose timing between an employee's protected activity and an adverse action against him." *McCoy v. City of Shreveport*, 492 F.3d 551, 562 (5th Cir. 2007).  "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark County School District v. Breeden*, 532 U.S. 268 (2001).  The Fifth Circuit has found that "'a time lapse of up to four months' may be sufficiently close," but that "a five month lapse is not close enough without other evidence of retaliation." *Feist v. Louisiana, Department of Justice, Office of the Attorney General*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *Evans v. Houston*, 246 F.3d 344, 354 (5th Cir. 2001) and *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002)).  In this case, the closest act of retaliation that Tejada alleges took place in May 2009, nearly two years after her complaint about Guzman and before she had filed her 2010 charge of retaliation.  Thus, absent other evidence of

retaliation, the lapse in time between Tejada's protected activity and the alleged harassment is too long to support a claim of retaliation.

Not only does temporal proximity not support the causation prong, but there is also no evidence that TAB departed from its typical policies and procedures in dealing with Tejada. *See Schroeder v. Greater New Orleans Federal Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011). The most severe action of all those identified was the 60-day term of probation Tejada received on May 20, 2011, for attendance issues. Defendant's Ex. B-1, TAB-MT 30. Tejada admitted in her deposition that she remembered having three unscheduled appointments, one unexplained absence, five illnesses, one illness of a family member, and one early departure for the 5-month period from January 2011 to May 2011. Tejada Depo. at 136. Renee Penz testified that during this time she evaluated all the attendance records of all TAB employees and issued written warnings and probation to those that exceeded a certain number of attendance events, putting several employees on probation at this time. Defendant's Ex. F, Penz Depo. at 100-102.[3]

Further, the record shows that the employees of TAB bickered and fought both before and after Tejada's complaints. Defendant's Ex. C, Tejada Depo. at 49-51, 46 (stating that Benavides called Tejada a "cow" and other "embarrassing" names, and threatened Tejada with a knife before her complaint against Guzman). With regard to events involving Benavides, the evidence shows that Tejada and Benavides complained about each other constantly. They even complained about each other on the same date, August 19, 2010. Defendant's Ex. B-1, TAB-MT 36 (statement by Tejada's supervisor, Irene Pinieda that Tejada had reported that Benavides had called her a name while

---

[3]The only departure from policy that Tejada points to is the evidence of Mayfield's involvement in some of the complaints involving Tejada, which she asserts is out of the ordinary. Yet, Tejada has submitted evidence that Mayfield was personally involved in an earlier issue involving other employees, so the evidence suggests that his involvement is not in fact out of the ordinary. Plaintiff's Ex. 5.

walking by); Defendant's Ex. B-1, TAB-MT 35 (Benavides' statement that she feels that Tejada makes discriminatory remarks about Mexicans, harasses her and laughs at her). Further, there is no evidence that Benavides supervised Tejada or harassed her while acting as her supervisor. *Id.* at 43. Retaliation by co-workers, so long as it is not in furtherance of the employer's business, is not actionable in a Title VII retaliation case. *Long v. Eastfield College*, 88 F.3d 300, 206 (5th Cir. 1996). At the end of the day, the only thing Tejada offers to show a causal connection between the disparate acts of alleged harassment against her, and her 2007 and 2010 complaints, is her subjective belief. At the summary judgment stage, subjective belief is insufficient to create a genuine factual issue for trial. *Kennerson v. Guidry*, 135 F. App'x 639, 641 (5th Cir. 2005) (in "a Title VII employment discrimination or retaliation case, plaintiff's subjective belief [is] an insufficient defense to a summary judgment motion").

Second, even if Tejada were able to fulfill the causation prong of her prima facie case, she has failed to show that any of the alleged harassment she suffered was "materially adverse." Defendant's Ex. C, Tejada Depo. at 98:1-2; *Burlington N & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). For purposes of retaliation claims, an adverse employment action is defined as an action that is "materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* "Material" adversity must be more than trivial harm, and "petty slights or minor annoyances that often take place at work and that all employees experience" are not actionable. *Id.* Insults, and threats of suspension or termination in response to misconduct are events the Fifth Circuit has found do not amount to a materially adverse employment action that can support a Title VII claim. *Aryain v. Wal-Mart Stores Tex., LP*, 534 F.3d 473, 485-86 (5th Cir. 2008); *Mitchell v. Snow*, 326 F. App'x 852, 856 (5th Cir. 2009) (unpublished). The Court finds that a reasonable employee would not have been dissuaded from making a further charge by the TAB's actions as described by Tejada. In fact, Tejada filed an

additional charge in 2010 alleging retaliation, stating that Mayfield had asserted that "what could happen to Guzman could happen to me." Defendant's Ex. 17.

Finally, Tejada has failed to proffer adequate summary judgment evidence that she took advantage of corrective opportunities provided by TAB. *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 437-39 (5th Cir. 2005). In this regard, it is important to note that the alleged acts of harassment Tejada suffered have no obvious connection, and were committed by several different employees, most of whom were Tejada's peers, not her supervisors. Although Tejada complained to Pineda on August 19, 2009, about alleged mistreatment from Benavides, she never informed Pineda, or anyone else, of her belief this harassment was in retaliation for protected activity. *Id.* 144:20-23 ("Q: Did you tell Ms. Pineda that you believed Clara was doing that because you had made a complaint regarding Sal Guzman? A: No, I didn't."). Similarly, Tejada does not assert she told Mayfield she faced retaliatory harassment by Benavides, only that generally she was being treated poorly and harassed. Plaintiff's Ex. 3. There is no evidence that Tejada's supervisors either were put on notice, or should have known, that the alleged harassment was in retaliation for Tejada having complained about Guzman in 2007, or her having filed a claim of retaliation with the EEOC in 2010. And it is undisputed that Tejada failed to explicitly inform her employer that she believed she was suffering retaliatory harassment. At most, the evidence supports TAB being aware of a number of personality conflicts between Tejada and other employees, something which Title VII does not protect against. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012); Defendant's Ex. C, Tejada Depo. at 143-145.

Finally, in many instances the undisputed record actually contradicts Tejada's claim that the TAB was trying to create a hostile environment for her. For example the record reflects several instances where the TAB received complaints against Tejada from co-workers, and the TAB declined to take any action against Tejada at all. The TAB did not discipline Tejada when Garza

complained about her on May 16, 2011, because there were no corroborating witnesses. Defendant's Ex. B-1, TAB-MT 31. Similarly, TAB did not take action against Tejada for the June 1, 2011 complaint by Andy Mireles. Defendant's Ex. B-1, TAB-MT 29.

For all of these reasons, the Court finds that Tejada has failed to make out a prima facie case of retaliatory hostile work environment and thus recommends that the district judge grant summary judgment on this claim.

## C. Constructive Discharge Claim

Tejada also alleges she was constructively discharged from her job at TAB. A constructive discharge occurs when an employee resigns because "the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."[4] *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 342 (5th Cir. 2005). To make this determination, the Court engages in a fact-intensive analysis, and looks for the following types of actions by the employer as indications of a forced resignation:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger or less experienced/qualified supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Id.* (additional citations omitted). "Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Lauderdale v. Texas Dept. of Criminal Justice, Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe*, 237 F.3d 556,

---

[4] It is difficult to separate this claim conceptually from Tejada's "retaliatory hostile work environment" claim, as she is essentially arguing the same thing in both causes of action, *i.e.*, that she was bullied and harassed into quitting, in retaliation for her two complaints. The primary difference would appear to involve who allegedly took the actions she complains of, Tejada's co-workers (the hostile environment claim) or her employer (the constructive discharge claim).

566 (5th Cir. 2001)). The Court applies an objective "reasonable employee" test: "whether a reasonable person in the plaintiff's shoes would have felt compelled to resign." *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). Generally, the employee who resigned bears the burden of proving constructive discharge. *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 650 (5th Cir. 2004).

Here, Tejada was not demoted, her salary was not reduced, her job responsibilities were not reduced, her position did not change, and she was neither offered early retirement nor given degrading work. Therefore, the only possible remaining basis for Tejada's constructive discharge claim is the assertion that she was subjected to "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Keelan,* 407 F.3d at 342. When asked to describe why she resigned, in her deposition Tejada testified that it was because of "verbal abuse, threats, name calling, and the two meetings with Jerry Mayfield." Defendant's Ex. C, Tejada Depo. at 71-72

In "deferral states" such as Texas, an aggrieved party must file an EEOC charge within 300 days after the alleged unlawful practice occurred. *See* 42 U.S.C. § 2000e–5(e); *see also Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 554–55 (5th Cir. 1987). The 300–day filing period is not jurisdictional, but rather is more akin to, and operates as, a limitations period. *E.g., Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988); *Pruet Prod. Co. v. Ayles*, 784 F.2d 1275, 1279 (5th Cir. 1986). The period commences on the date the alleged unlawful practice occurred. *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 474 (5th Cir. 1989) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *Chapman v. Homco, Inc.*, 886 F.2d 756, 758 (5th Cir. 1989). The TAB asserts that the majority of Tejada's claims are time-barred because she filed her EEOC Charge on March 12, 2012, and that the majority of the actions she complains about took place more than 300 days before this. As noted above, Tejada resigned on June 2, 2011. Tejada asserts that she contacted the EEOC on

March 1, 2012, and it accepted her claim at that time. Plaintiff's Ex. 5. For the purposes of this motion the Court will use March 1, 2012 as the operative date. Thus, unlawful employment actions occurring before May 6, 2011, would be time-barred.

As noted, Tejada testified that she resigned because of verbal abuse, threats, name calling, and two meetings with Mayfield at which she alleges he made veiled threats to her by suggesting that what happened to Sal Guzman could happen to her. Defendant's Ex. C, Tejada Depo. at 52, 71. At her deposition, Tejada testified that all of the things that led to her resignation occurred between July 2010, and April 1, 2011. *Id.* at 24-25, 29. When asked to identify when the two meetings with Mayfield had taken place, Tejada gave the following testimony:

> Q: Okay. Tell me about those two meetings.
>
> A: When I first went in the meeting, he did mention something about harassment, but he did not mention it was no – it was not tolerated there. He did not mention that.
>
> He mentioned Sal Guzman and how long has it been. The first meeting was two years later. The second meeting was almost three years.
>
> Q: Three years after –
>
> A: Guzman was gone.

Tejada Depo. at 56. Thus, Tejada testified that the first of the two meetings took place two years after Guzman was terminated, and the second took place three years after the termination. Guzman was terminated in September 2007, *see* Defendant's A, Ex. B-2, Tejada Depo. at 142, which means that Tejada was testifying that the meetings took place in September 2009 and 2010, respectively.[5]

---

[5]Notably, when she filed her October 2010 EEOC charge alleging that she had been retaliated against for complaining of Guzman's harassment, Tejada swore under penalties of perjury that "[o]n or about August 23, 2010, I was told that management had received complaints from my coworkers that I was harassing them. A management official told me what happened to Sal Guzman could happen to me." Plaintiff's Ex. 19. August 23, 2010 is effectively three years after Sal Guzman was

But in her response to the summary judgment motion, Tejada asserts that the second meeting did not occur until May 23, 2011, which would bring it within the limitations period. In support of this being the date of the second meeting, Tejada offers two pieces of evidence: (1) her Declaration (which states that she was called into Mayfield's office during the last two to three weeks of her employment); and (2) two pages from Human Resources employee Renee Penz's daytimer dated May 23, 2011. Plaintiff's Ex. 3 at ¶ 19; Plaintiff's Ex. 29-3 and 4. The TAB points out that Penz's daytimer does not list a meeting with Tejada, but rather references a meeting held by Penz, Randall, Mayfield and Pineda *about* Tejada, and that Mayfield testified that he could not recall any one-on-one meetings with Tejada after August of 2010. Defendant's Ex. E, Mayfield Depo. at 127. Thus, this latter evidence is not supportive of the claim that the meeting occurred in May 2011.

With regard to Tejada's Declaration, the TAB argues that she cannot create a fact dispute precluding summary judgment by offering a declaration that directly contradicts her deposition testimony. "It is well settled that [the Fifth Circuit] does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches without explanation sworn testimony." *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir.1996) (citations omitted); *see also Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 482 (5th Cir. 2002) (requiring an explanation when the only evidence preventing summary judgment is an affidavit that conflicts with deposition testimony). To the extent a party's affidavit contradicts her prior deposition testimony without explanation, she cannot use it to create a genuine issue of material fact for trial. *Doe v. Dallas Ind. School Dist.*, 220 F.3d 380 (5th Cir. 2000). A party's self-serving and unsupported statement in an affidavit will not

---

terminated in September 2007. This sworn statement from 2010 is therefore consistent with Tejada's sworn deposition testimony (in 2012) that she had a meeting with management (Mayfield, TAB's Executive Director) three years after Guzman was fired. It is also consistent with Mayfield's sworn testimony that the last one-on-one meeting he recalls having with Tejada was in August 2010. Mayfield Depo. at 127.

defeat summary judgment where the evidence in the record is to the contrary. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009). Tejada fails to offer any explanation for the contradictory dates set forth in her Declaration, as compared to her deposition testimony. In her Sur-Reply Tejada asserts that the dates she provided in her deposition and her EEOC Charge were approximate and that her Original Complaint specifically alleges that her final meeting with Mayfield occurred in the last month of her employment. Complaint at ¶ 10. She further argues that TAB never asked her the proximity in time between her last meeting with Mayfield and her last day of employment.

None of these are reasonable explanations. The claim that the dates stated in her deposition were "approximate" fails to explain the difference from her Declaration testimony, as September 2010 is not proximate to May 2011, but rather is eight months away. Second, the allegations of Tejada's complaint have no bearing on what her sworn testimony has been, as that is not a sworn document, and was authored by her attorney based upon "information and belief." Finally, the TAB was not required to ask Tejada the proximity of her last meeting with Mayfield and her constructive discharge—she had already testified when the meetings occurred. Tejada has offered no explanation in her Declaration or elsewhere for her contradictory statements other than stating "I do not have any clear recollection of specific dates." Plaintiff's Ex. 3 at ¶ 18. Thus, in ruling on the limitations issue the Court must disregard Tejada's Declaration. Based on the analysis set forth above, and Tejada's deposition testimony, the meetings with Mayfield would have taken place in 2009 and 2010. Thus, according to Tejada's own testimony, all of the actions which led to her resignation took place no later than April 1, 2011, more than 300 days before she filed her charge. Tejada's constructive discharge claim fails on this basis. *See, e.g., Benkert v. Tex. Dep't of Criminal Justice*, No. 02-20437, 2002 WL 31049461 at * 1 (5th Cir. 2002) (unpublished).

Even if the Court considered actions that took place outside 300 days of the EEOC charge as supportive of the constructive discharge claim, the evidence shows that the complained-of behavior was that of coworkers. Despite her allegations that Clara Benavides was an assistant supervisor, the evidence is that Benavides acted as an assistant supervisor in a department in which Tejada did not work. Plaintiff's Ex. 9, Randall Depo. 74-77 (testifying that Tejada was moved from the Binders department after Benavides became assistant supervisor because Tejada told Randall that she would not listen to Benavides because Benavides did not deserve to be an assistant). Additionally, assuming for the sake of argument Benavides did supervise Tejada at some point, Tejada has failed to present evidence that she was treated inappropriately by Benavides while Benavides supervised her. The rude behavior of coworkers, and even supervisors, cannot support a constructive discharge claim, without the explicit support or approval of the employer. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 440 (5th Cir. 2005); *Ranel v. Gilley Enterprises–Louisiana Partnership*, No. 08–0149, 2009 WL 1310879 at *5 (W.D. La. 2009)); *Trahan v. LaSalle Hosp. Service Dist. No. 1*, 2014 WL 1217850 (W.D. La. 2014) (Slip Copy). Tejada has offered no evidence that the TAB sanctioned any bad behavior of its employees toward Tejada, or that any alleged harassment was intended to force her to resign. Tejada Depo. at 71-72.

The two meetings with Mayfield, as described by Tejada, are also insufficient to support a constructive discharge claim. Tejada states that in each of the two meetings she alleges she had with Mayfield, he started each meeting by asking Tejada how long it had been since Guzman had been terminated, and threatened her with termination "like Sal Guzman." Response at 4. Mayfield testified that the only meeting he recalled took place on August 19, 2010, and was held in response to a complaint by Benavides that Tejada was making racist statements in the workplace. Mayfield Depo. at 127; 98-101. He explained:

> Q: To the best you can recall, what did you say in referencing Mr. Guzman in the meeting with Ms. Tejada in August of 2010?
>
> A. Well, I was talking with Ms. Tejada about her – the alleged harassment. We did have a discussion. She had – she seemed to be not quite understanding what I was telling her about, if she is harassing. I don't think I accused her of harassing. I didn't accuse her of it. We had a conversation about the accusations towards her.
>
> She didn't seem to understand that if she continued harassing people, she could be disciplined as well. She didn't seem to understand. So I repeated it two or three other ways to try to help her understand that she can't harass other employees, if she's doing so.
>
> And so after the second or third attempt to get her to understand that she can't harass other employees, I used that as an example, by saying, do you remember when Sal harassed you, he was terminated. And she said yes. She seemed to understand it then. So used as an example.

*Id.* at 99-100. Tejada does not deny that this is the way the conversation took place, but rather testified that she took the statement as a threat, and drew a connection between her 2007 complaint against Guzman, and the threat of termination at this August 2010 meeting. Even interpreting the statement as Tejada did, it is insufficient to support a claim of constructive discharge. *See Henn v. Nat'l Geog. Society*, 819 F.2d 824, 829–30 (7th Cir. 1987) (holding that threats to fire employees based on legitimate concerns about productivity do not constitute harassment, because "any threats made to these plaintiffs . . . were no greater than justified by their lack of sales"). An explanation by Mayfield to Tejada that she could be subjected to discipline, including termination, for harassing a co-employee on the basis of race, was an appropriate statement in the context of the complaint made by Benavides.

Considering the summary judgment evidence in the light most favorable to Tejada, a reasonable employee in Tejada's position would not have felt compelled to resign. There is simply nothing more than Tejada's conjecture to conclude that Mayfield's counseling of Tejada regarding harassment complaints was calculated to encourage Tejada's resignation, and it does not meet the

established standard for a constructive discharge. *McCoy v. City of Shreveport*, 492 F.3d 551, 558 (5th Cir. 2007) (counseling regarding workplace horseplay insufficient); *Brown v. Bunge Corp.*, 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming summary judgment even when employee had been demoted and received a reduction in job responsibilities upon return to work); *McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 741 (5th Cir.1993) (affirming summary judgment when employee claimed he had been publicly ridiculed and admonished). Further, there is no evidence that the alleged misbehavior of Tejada's co-workers was in any way motivated by her employer. Accordingly, the Court will recommend that the district judge grant the motion for summary judgment on Tejada's constructive discharge claim.

## V. RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the district judge **GRANT** Defendant's Motion for Summary Judgment (Dkt. No. 16 ).

## VI. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466,

472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 25th day of June, 2014.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE