IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MARIA TEJADA, | ) | CV. NO. 1:12-CV-997-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE TRAVIS ASSOCIATION FOR | ) | |
| THE BLIND, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFF'S OBJECTIONS TO MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATION; (2) GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On July 24, 2014, the Court heard oral argument on Objections to the

Magistrate Judge's Report and Recommendation to grant Defendant Travis

Association for the Blind's Motion for Summary Judgment filed by Plaintiff Maria

Tejada ("Plaintiff" or "Tejada").  (Dkt. # 30.)   Robert Notzon, Esq., represented

Plaintiff at the hearing; Shafeeqa Watkins Giarratani, Esq., represented Defendant

Travis Association for the Blind ("Defendant" or "TAB").  For the reasons that

follow, the Court **DENIES** Plaintiff's Objections to the Magistrate Judge's Report

and Recommendation and **GRANTS** Defendant's Motion for Summary Judgment.

1

BACKGROUND

Plaintiff Maria Tejada is legally blind and was employed by The Travis Association for the Blind, a non-profit entity that provides employment, training, and education to blind and visually-impaired individuals. ("Mayfield Aff.," Dkt. # 16, Ex. A.)

Tejada was employed at TAB from December 2006 until June 2, 2011, when she claims she was constructively terminated. ("Tejada Dep.," Dkt. # 16, Ex. C, 86–87, Mar. 19, 2013.) Tejada was originally hired to sew buckles on rigger belts for United States Army uniforms in the Belts Department. (Id.) Her original supervisor was Sylvia Gonzales. (Id.) Tejada then moved to the Binders Department, where her supervisor was Sal Guzman. (Id. at 87–88.) In September of 2007, Guzman, who is also blind, made sexually inappropriate comments to Tejada.[1] (Mayfield Aff.; Tejada Dep. 137–39.) TAB investigated Tejada's complaint and terminated Guzman. (Tejada Dep. 140–41; Dkt. # 16, Ex. B-2.) After Guzman's termination, Tejada was assigned Laura Casias as her supervisor in the Binders Department. (Tejada Dep. 88.) Tejada was later assigned to the Trouser Belt Department under the supervision of Irene Pineda. (Id. at 89–90.) She later moved to the Chin Straps Department under the supervision of Dolores

---

[1] Guzman's comments referenced smoking marijuana and having sex with himself and two other male employees standing nearby, Donald James and Lionel DeLeon. ("Tejada Decl.," Dkt. # 19, Ex. 3 ¶ 3; Mayfield Aff. ¶ 4.)

Hernandez and then to the Soap Department also under the supervision of Dolores

Hernandez.  (Id.)  Corrine Randall was the Production Manager and supervised

various departments where Tejada worked.  Randall's supervisor was TAB's

Executive Director, Jerry Mayfield.  (Tejada Decl. ¶ 2.)

On November 17, 2007, Tejada was moved from the Soap

Department back to the Binders Department because some equipment was down.

She became upset and walked off the job.  (Dkt. # 16, Ex. B-1 at 4.)  Though not

subjected to any formal discipline, Tejada was counseled that if she walked off the

job again she could be suspended for three days.  (Id.)

In May of 2009, Tejada and co-worker Clara Benavides were

involved in a confrontation in which Benavides is alleged to have threatened

Tejada, telling her to "clock out now and step outside."  (Id. at 2.)  A Binders

Department supervisor approached a Senior Production Manager, Tim Gates about

the incident.  (Id.)  Gates "immediately spoke with Maria [Tejada] to begin an

investigation to understand from her perspective what had occurred."  (Id.)

According to Tejada's account of the incident, Benavides felt that Tejada was

talking about her and became upset, telling Tejada to "clock out now and step

outside," threatening to beat Tejada up if she sees her around town, and pointing

out that Tejada was the reason that Sal Guzman was no longer employed at TAB.

(Id.)  Gates called Benavides into his office.  (Id.)  Benavides first denied making

3

such statements, but later admitted them and understood that messages like that create a threatening presence in the workplace.  (Id.)  Gates warned Benavides that future threats could subject her to termination.  (Id.)

On April 28, 2010, one of Tejada's coworkers, George Adams, complained that Tejada was harassing him by talking about him pejoratively to other employees.  (Tejada Decl. ¶ 12; Dkt. # 16, Ex. B-1 at 41.)  On April 30, 2010, Corrine Randall warned Tejada that if she continued to make negative comments about coworkers to other coworkers, that she would be suspended for three days.  (Dkt. # 16, Ex. B-1 at 40.)  Tejada informed Randall that she was voluntarily taking the three-day suspension.  (Id.)  Randall explained that she was not suspending Tejada, but Tejada clocked out and left anyway.  (Id.)  Tejada acknowledged that she knew she was not being suspended at that time.  (Tejada Dep. 127.)  In response, on May 5, 2010, Randall explained to Tejada that she could not "suspend herself," and suspended Tejada for three days without pay for walking out and for missing work from April 30, 2010, to May 4, 2010.  (Dkt. # 16, Ex. B-1 at 37.)

On August 19, 2010, Binders Department employee Clara Benavides complained that Tejada was making comments about Mexican immigrants taking jobs away from people from the United States, making national origin comments about Benavides and her husband, laughing in Benavides' face, mimicking

4

Benavides, and telling other employees that Benavides was "no one."  (Id. at 35.)

Jerry Mayfield spoke with Tejada about this complaint, gave her a verbal warning,

and gave her coaching about treating others with respect.  ("Mayfield Dep.," Dkt.

# 16, Ex. E, 94–96, 100, Dec. 2, 2013; Dkt. # 16, Ex. B-1 at 33.)  During the

meeting, Mayfield referenced her complaints against Guzman while counseling

Tejada on not making racially inappropriate remarks to Benavides by noting that

just as Guzman was terminated for harassing her, if she was engaging in unlawful

harassment, her employment could be ended too.  (Mayfield Dep. 99:10–100:3.)

On the same date, Tejada complained to her supervisor Irene Pinieda, that

Benavides had called Tejada a name while walking by her.  (Dkt. # 16, Ex. B-1 at

36.)

On October 12, 2010, Tejada filed a discrimination charge with the

EEOC alleging that she was being retaliated against for her 2007 complaint against

Guzman.  (Dkt. # 19, Ex. 19.)  In her charge she stated that "On or about August

23, 2010, I was told that management had received complaints from my coworkers

that I was harassing them.  A management official told me what happened to Sal

Guzman could happen to me.  I believe my employer is retaliating against

me . . . ."  (Id.)

On November 17, 2010, Quality Control employee Sharlene Ervin

reported that she received an anonymous call stating that Tejada was criticizing

Quality Control employees by saying that they "get paid a lot of money just to stand around and do nothing." (Dkt. # 16, Ex. B-1 at 32.) Because the complaint was anonymous, TAB took no action against Tejada. ("Penz Dep.," Dkt. # 19, Ex. 8, 92:4–8, Dec. 10, 2013.)

In mid-May 2011, Tejada's co-worker, Ricardo Piedra, was called to Mayfield's office over the loudspeaker. (Tejada Decl. ¶ 18.) Tejada alleges that after this, Piedra began avoiding her like the other employees did. (Id.) Also in mid-May, employee Jose "Tony" Garza complained that Tejada harassed him and other employees by cursing at them verbally and in sign language, laughing at employees, and giving them dirty looks. (Dkt. # 16, Ex. B-1 at 31.) TAB took no action against Tejada. (Id.) On May 20, 2011, Tejada was given a written warning and placed on probation for sixty days for attendance issues. (Id. at 30.) On June 1, 2011, TAB employee Andy Mireles reported that Tejada angrily pushed him out of the way when he accidentally tapped her with his cane. (Id. at 29.) On June 2, 2011, Tejada resigned from TAB without giving notice. (Tejada Dep. 70–71.)

Nine months later on March 12, 2012, Tejada filed a Charge of Discrimination with the EEOC alleging she was harassed and retaliated against by Mayfield and Randall after filing charges and complaints against TAB. (Dkt. # 19, Ex. 4.) She alleged that she had been constructively discharged on June 3, 2011. (Id. at 3.) The EEOC issued a right to sue letter on July 31, 2012.

6

On October 29, 2012, Tejada filed this lawsuit alleging retaliation, a retaliatory hostile work environment, and constructive discharge, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2.  (Dkt. # 1 ¶ 8.)  Tejada has since withdrawn the retaliation claim, (see Dkt. # 19 at 1 n.1), and her remaining claims are therefore that TAB created or permitted a retaliatory hostile work environment and that she was constructively discharged.

On January 13, 2014, TAB filed a Motion for Summary Judgment. (Dkt # 16.)  On January 27, 2014, Tejada filed a Response.  (Dkt. # 19.)  The Court referred TAB's Motion to Magistrate Judge Andrew Austin.  (Dkt. # 22.)  On June 25, 2014, the Magistrate Judge issued a Report and Recommendation that TAB's Motion for Summary Judgment be granted.  ("R&R," Dkt. # 29.)  Tejada timely filed Objections to the Report.  ("Obj.," Dkt. # 30.)  On July 16, 2014, TAB timely filed a Response to Tejada's Objections.  ("Obj. Resp.," Dkt. # 33.)

LEGAL STANDARDS

## I.     Review of a Magistrate Judge's Memorandum and Recommendation

Any party may contest the Magistrate Judge's findings by filing written objections within fourteen days of being served with a copy of the Report and Recommendation.  28 U.S.C. § 636(b)(1)(C).  The objections must specifically identify those findings or recommendations that the party wishes to have the district court consider.  Thomas v. Arn, 474 U.S. 140, 151 (1985).  A district court

7

need not consider "[f]rivolous, conclusive, or general objections." <u>Battle v. U.S.</u>

<u>Parole Comm'n</u>, 834 F.2d 419, 421 (5th Cir. 1987) (quoting <u>Nettles v. Wainwright</u>,

677 F.2d 404, 410 n.8 (5th Cir. 1982), <u>overruled on other grounds</u> by <u>Douglass v.</u>

<u>United States Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996)).

   The Court must conduct a de novo review of any of the Magistrate

Judge's conclusions to which a party has specifically objected.  <u>See</u> 28 U.S.C.

§ 636(b)(1)(C) ("A judge of the court shall make a de novo determination of those

portions of the report or specified proposed findings or recommendations to which

objection is made.").  On the other hand, findings to which no specific objections

are made do not require de novo review; the Court need only determine whether

the Memorandum and Recommendation is clearly erroneous or contrary to law.

<u>United States v. Wilson</u>, 864 F.2d 1219, 1221 (5th Cir. 1989).

## II. <u>Motion for Summary Judgment</u>

   Summary judgment is granted under Federal Rule of Civil Procedure

56 when "the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

<u>see also</u> <u>Cannata v. Catholic Diocese of Austin</u>, 700 F.3d 169, 172 (5th Cir. 2012).

"In an employment discrimination case, we focus on whether a genuine issue exists

as to whether the defendant intentionally discriminated against the plaintiff."

<u>Grimes v. Tex. Dep't of Mental Health & Mental Retardation</u>, 102 F.3d 137, 139

(5th Cir. 1996).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003); Douglass v. United Servs. Automobile Assoc., 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.").

DISCUSSION

I.     Retaliatory Hostile Work Environment Claim

Although the Fifth Circuit had not yet determined whether a retaliatory hostile work environment cause of action exists, the Magistrate Judge utilized cases from other circuits to graft the requisite elements to state such a claim.  (R&R at 5–6.)  He held that Tejada needed to show the following five elements to establish a prima facie case: (1) Tejada engaged in a protected activity, (2) she was subjected to unwelcome harassment, (3) there was a causal connection between the harassment and the protected activity, (4) the harassment affected a term, condition, or privilege of employment, (5) the employer knew or should have known about the harassment in question and failed to take prompt remedial action.  (Id. at 6.)  He then noted that if Tejada established a prima facie case, the burden would shift to TAB to proffer a legitimate, nonretaliatory reason for its actions.  Assuming TAB had set forth such a reason, the burden would shift back to Tejada to show that TAB's reasons were mere pretext for retaliation.  (Id.)

The Magistrate Judge concluded that Tejada failed to establish a causal connection between the alleged harassment and her protected activity (id. at 8–10), the alleged harassment was not "materially adverse" so as to affect a condition of her employment (id. at 10–11), and there was no evidence TAB knew of any alleged co-worker retaliatory harassment (id. at 11).  Tejada now objects to

10

all three findings.

        A.     <u>Causal Connection</u>

        The Magistrate Judge first noted:

> Most courts consider three factors to help determine whether a causal link has been demonstrated at the prima facie case: (1) the plaintiff's past disciplinary record, (2) whether the employer followed its typical policies and procedures in taking action against the employee, and (3) the temporal relationship between the employee's conduct and the adverse act.

(R&R at 8.)  Here, he found that Tejada's employment record revealed a history of bickering before and after she made her complaint about Guzman and before and after she made her 2010 charge of retaliation, noting that "the evidence show[ed] that Tejada and Benavides complained about each other constantly."  (<u>Id.</u> at 9.)  He also found that there was "no evidence that TAB departed from its typical policies and procedures in dealing with Tejada."  (<u>Id.</u>)  In fact, the most severe disciplinary action Tejada identified was a 60-day probation—which was the result of Tejada's numerous attendance issues.[2]  (<u>Id.</u>)  With regard to the third factor, he concluded that the temporal link was not satisfied because "the closest act of retaliation that Tejada alleges took place [was] in May 2009, nearly two years after her complaint about Guzman and before she had filed her 2010 charge of retaliation."  (<u>Id.</u>)

        Tejada objects to the Magistrate Judge's finding and asserts that TAB

---

[2] There is no evidence that TAB treated Tejada differently than other employees in this regard.

CEO Jerry Mayfield "bridged the temporal gap in his meetings with Tejada in August 2010 and May 2011." (Obj. at 4.) She relies exclusively on her Declaration, wherein she described the August 2010 conversation with Mayfield where he asked her how long it had been since Guzman had been fired and then he answered his own question with "three or three and a half years." (Id. (citing Dkt. # 19, Ex. 3 ¶¶ 14, 19)) She posits that her "inference . . . that she was being threatened with termination for having participated in protected activity" is entitled to deference in her favor as the non-moving party. (Id. at 6.)

However, Mayfield's one, isolated comment about Guzman's termination is insufficient to establish a causal connection between her protected activity and the hostile work environment. Rather, it is abundantly clear that any "harassment" that did occur was not predicated on Tejada's previous complaint about Guzman in September 2007, nor her EEOC Complaint in August 2010. Although Tejada complains that various supervisors, including Mayfield, "ignored" her and her coworkers were mean to her, she fails to identify any evidence that either her supervisors or her coworkers were motivated by her protected activity. In fact, Tejada's own Declaration further explains Mayfield's aforementioned comment: "Mayfield then went on to tell me that I had to stop harassing other employees and that if I didn't that I would be fired just like "Sal" [Guzman]." (Dkt. # 19, Ex. 3 ¶ 19.) Mayfield's knowledge about Tejada's earlier

complaint and use of it as an example to attempt to correct Tejada's disruptive

work behavior does not establish causal connection between the alleged

harassment and her protected activity.  See Ray v. Tandem Computers, 63 F.3d

429, 436 (5th Cir. 1995) (holding that a single vague statement susceptible to

several innocuous interpretations is insufficient to avoid summary judgment).

Alternatively, Tejada argues that "Mayfield's threat to terminate

Tejada and reference to the termination of Guzman that had resulted from Tejada's

protected activity of reporting Guzman's sexual harassment demonstrates that TAB

was acutely aware of how much time had passed since Tejada's complaint and that

TAB was also likely aware of the harassment and retaliation she was suffering as a

result."  (Obj. at 5.)  She appears to assert that Mayfield was lying-in-wait for

nearly three years for a so-called "causal connection statute of limitations" to pass

so that he and the rest of TAB could continue retaliating against Tejada without

fear of litigation.  Not only is this argument far-fetched, it borders on fanciful.

Also in support of her objection, Tejada argues that a causal

connection did exist because Tejada's manager over operations admitted that she

was aware that Tejada had complained about Benavides retaliating against her

since Guzman's termination.  (Obj. at 5 (citing "Randall Dep.," Dkt # 19, Ex. 3,

67:5–68:20, 84:14–85:14, Dec. 10, 2013; Dkt. # 16, Ex. B1, B2).)  However, the

cited deposition testimony does not indicate that Tejada's manager knew about

13

Benavides <u>retaliating</u> against Tejada <u>for complaining about Guzman</u>.  Instead, it only describes one of the many altercations between Benavides and Tejada. Moreover, the exhibits cited do not substantiate that Benavides' alleged harassment against Tejada was motivated by Tejada's complaint against Guzman.  The only reference to Guzman in one of the cited exhibits came from Tim Gates, Senior Production manner, where he recounts a conversation with Tejada about a version of an altercation with her and Benavides: "Maria also stated that Clara also threatened to beat her up if she sees her around town, and continued to point out that she (Maria) was the reason Sal Guzman was no longer employed here."  (Dkt. # 16, B-1 at 2.)  However, Gates' statement only memorializes a version of events according to Tejada.  Of course, "[s]elf-serving allegations are not the type of significant probative evidence required to defeat summary judgment," <u>Kariuki v. Tarango</u>, 709 F.3d 495, 505 (5th Cir. 2013) (quoting <u>United States v. Lawrence</u>, 276 F.3d 193, 197 (5th Cir. 2001)).  Therefore, Gates' statement is insufficient to support conclusion that Benavides harassed Tejada because of her complaint against Guzman.

Tejada's cited provisions do not establish that there was a causal connection between any alleged harassment.  The Magistrate Judge correctly observed that there is no evidence to suggest that any harassment that did occur was motivated by Tejada's previous complaint about Guzman or her filing an

EEOC complaint.  Instead, the only thing Tejada offers to show a causal

connection is her subjective belief that her coworkers and supervisors were

retaliating against her for her complaint against Guzman that took place over two

years earlier.  As the Magistrate Judge properly noted, "[a]t the summary judgment

stage, subjective belief is insufficient to create a genuine factual issue for trial."

(R&R at 10 (citing Kennerson v. Guidry, 135 F. App'x 639, 641 (5th Cir. 2005).)

> B.    "Materially Adverse" Harassment Affecting Condition of
>        Employment

The Magistrate Judge next found that "even if Tejada were able to

fulfill the causation prong of her prima facie case, she has failed to show that any

of the alleged harassment she suffered was 'materially adverse.'"  (R&R at 10.)

He concluded that "a reasonable employee would not have been dissuaded from

making a further charge by the TAB's actions as described by Tejada."  (Id.)

Tejada objects to the Magistrate Judge's determination that the

harassment she suffered was not materially adverse.  (Obj. at 8.)  She asserts that

the Report and Recommendation "ignores competent summary judgment evidence

that is probative of the material harm Tejada suffered to include statements from

disinterested third party witnesses: Portales and Espinosa."  (Id.)

"To constitute prohibited retaliation, an employment action must be

'materially adverse,' one that would 'dissuade[ ] a reasonable worker from making

or supporting a charge of discrimination.'"  <u>Stewart v. Miss. Transp. Com'n</u>, 586

F.3d 321, 331 (5th Cir. 2009) (quoting <u>Burlington Northern and Santa Fe Ry. Co.</u>

<u>v. White,</u> 548 U.S. 53, 68 (2006)).  The purpose of this objective standard is "to

separate significant from trivial harms" and "filter out complaints attacking the

ordinary tribulations of the workplace, such as the sporadic use of abusive

language, gender-related jokes, and occasional teasing."  <u>Id.</u>

   Additionally, in determining whether an adverse employment action

occurred, the focus is on the final decision maker.  <u>Hernandez v. Yellow Transp.,</u>

<u>Inc.,</u> 670 F.3d 644, 657 (5th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 136 (2012) (citing

<u>Gee v. Principi</u>, 289 F.3d 342, 346 (5th Cir. 2002)).  "The actions of ordinary

employees are not imputable to their employer unless they are conducted 'in

furtherance of the employer's business.'"  <u>Id.</u> (quoting <u>Long v. Eastfield Coll.</u>, 88

F.3d 300, 306 (5th Cir. 1996)).  "There must, however, be 'a direct relationship

between the allegedly discriminatory conduct and the employer's business.'"  <u>Id.</u>

(quoting <u>Long</u>, 88 F.3d at 306).

   The majority of the incidents cited by Portales and Espinosa relate to

alleged harassment by Tejada's coworkers, namely Benavides.[3]  However, during

---

[3] Some of the instances regarding Benavides clearly do not involve any alleged
retaliation.  For example, Espinosa discusses at length a particular alternation
between Benavides and Tejada where Benavides allegedly placed a metal binder
clip into a machine that Tejada was operating to "get" Tejada.  ("Espinosa Aff.,"

16

these altercations, Benavides was Tejada's coworker and none of the altercations were in furtherance of TAB's business.  For example, Portales averred that he heard Benavides call Tejada "Bruja," "cow," and make crude references to Tejada's breasts.  (Portales Aff. at 2.)  Portales also claimed that on another occasion, Benavides had pulled a switchblade on Tejada and threatened to stab her.  Despite the troubling nature of these accusations, none of them relate in any way to TAB's business.  See Long, 88 F.3d at 306 ("Employers are liable under Title VII, in accordance with common law agency principles, for the acts of employees committed in the furtherance of the employer's business.")  As such, they are not "employer actions" within the context of Title VII's anti-retaliation provision.  See id. (holding that the Fifth Circuit "do[es] not hold employers liable under Title VII for every discriminatory act committed by employees in the workplace").

With regard to the instances where Portales and Espinosa do talk about Tejada's supervisors, namely Corrine Randall and Irene Pineda, they do not demonstrate that the supervisors' actions were materially adverse.  According to Espinosa, he "would witness both of these supervisors coming into the department and instructing Ms. Tejada not to talk to other employees and placing Ms. Tejada in a location where she was required to work away or at a distance set apart from

---

Dkt. # 15 at 2.)  However, Benavides' actions could not have been retaliatory because Guzman was still employed at TAB when this occurred.

everyone else." (Espinosa Aff. at 1.)  He adds that Pineda would "speak to Ms.

Tejada harshly" and "snip at Ms. Tejada often and about small stuff."  (Id.)

Portales contended that supervisors would pressure him to stay away from Tejada.

("Portales Aff.," Dkt. # 19, Ex. 14 at 1–2.)

      Speaking harshly, sniping about small infractions, and informing other

employees to steer clear of Tejada are not actionable employer actions.  See Aryain

v. Wal-Mart Stores Tex. LP, 534 F.3d 473, 484–85 (5th Cir. 2008) (being "treated

poorly" by supervisors, denied requested break times, and assigned to physically

"tough" work are collectively no more than "petty slights" that cannot form the

basis of a retaliation claim); Earle v. Aramark Corp., 247 F. App'x 519, 524 (5th

Cir. 2007 (holding that disciplinary write-ups and alleged retaliatory micro-

managing of an employee's performance did not constitute materially adverse

employment actions); see also Grice v. FMC Techs. Inc., 216 F. App'x 401, 404,

407 (5th Cir. 2007) (holding that an employee's allegation that he was watched

more closely than other employees was not the sort of action that would dissuade a

reasonable employee from reporting discrimination); DeHart v. Baker Hughes

Oilfield Operations, 214 F. App'x 437, 442 (5th Cir. 2007) (finding that alleged

retaliatory written warnings would not have dissuaded a reasonable worker from

making or supporting a charge of discrimination).

      The supervisors' ostracism of Tejada is more troublesome, but still

18

not actionable.  See generally Manatt v. Bank of Am., 339 F.3d 792, 803 (9th Cir.

2003) (holding that rudeness or ostracism, standing alone, usually is not enough to

support a hostile work environment claim); Simas v. First Citizens' Fed. Credit

Union, 170 F.3d 37, 52 n.12 (1st Cir. 1999) (noting, in related context, that "social

ostracism alone is rarely actionable").  In Stewart v. Mississippi Transportation

Com'n, an employee claimed retaliation when, after reporting sexual harassment,

she was transferred and her work load increased, personal items were taken from

her desk, other employees were told not to fraternize with her, she was not allowed

to close her office door and the locks were changed, she was chastised by her

superiors and she was not invited to functions with the other secretaries.  586 F.3d

at 330.  The court held that as a matter of law, the taking of the items from her

desk, changing of the locks on her door, and the chastisement and ostracism did

not rise to the level of material adversity.  Id. at 331–32.

On the other hand, in Lee v. City of Corpus Christi, an employee

claimed that that there was an established weekly managers' meeting and she was

specifically directed not to attend it and that the order for her not to attend the

meetings came after she complained about racial discrimination,  749 F. Supp. 2d

521, 540 (S.D. Tex. 2010).  The Southern District of Texas found that because the

employee averred that the isolation and exclusion from the meetings caused her to

be unable to obtain information she needed to do her job, excluding her from

meetings she needed to attend in order to fulfill the obligations of her position was a more severe act of retaliation than that was alleged in <u>Stewart</u>.  <u>Id.</u>  Therefore, the court held that it could not say as a matter of law that the exclusion and isolation were not materially adverse; instead, "fact issues exist regarding whether the isolation and exclusion were such that they could dissuade a reasonable worker from making or supporting a charge of discrimination."  <u>Id.</u>

Here, the purported actions described by Portales and Espinosa is more like the isolation in <u>Stewart</u> rather than in <u>Lee</u>.  There is no evidence in the record to suggest that ostracizing Tejada made fulfilling her duties at TAB more difficult.  Rather, these incidents were solely the product of "petty slights, minor annoyances, and simple lack of good manners," which the Supreme Court has recognized as not actionable.  <u>Aryain</u>, 534 F.3d at 485 (quoting <u>White</u>, 548 U.S. at 68).

C.    <u>Employer on Notice of Co-Worker Retaliatory Harassment and Failed to Take Corrective Action</u>

The Magistrate Judge concluded that Tejada failed to proffer adequate summary judgment evidence that her supervisors either were put on notice or should have known that the alleged harassment was in retaliation for Tejada having complained about Guzman in 2007 or having filed a claim of retaliation in 2010. (R&R at 11.)  At most, he noted, "the evidence supports TAB being aware of a

number of personality conflicts between Tejada and other employees, something which Title VII does not protect against." (Id.)

Tejada objects to the Magistrate Judge's determination, arguing that TAB was aware or should have been aware that Benavides was in an intimate relationship with Guzman and that Benavides was allegedly retaliating against Tejada for Guzman's termination.  (Obj. at 7.)  She argues that because TAB knew of Benavides retaliating against Tejada, it was TAB's responsibility to take prompt remedial action.  (Id. at 4.)

However, all of the evidence Tejada cites for these assertions fails to create a genuine issue of material fact that TAB knew or should have known that Benavides was retaliating against Tejada.  First, the evidence does not show that Benavides was Guzman's "paramour" as Tejada repeatedly describes throughout her briefing.  (See Obj. at 6, 7, 9.)  At best, the evidence shows that Guzman may have kissed Benavides on the cheek prior to September 2007.  (See Dkt. # 16, B-2.)  Second, although Tejada cites Docket No. 16, Exhibit B-1 to show that "Tejada's first complaint of harassment by Benavides would have immediately put TAB on notice of the retaliatory conduct," (Obj. at 4), the evidence in Exhibit B-1 actually supports the opposite conclusion.  Not only did TAB have no real colorable reason to think that Guzman and Benavides engaged in a relationship prior to September 2007, but Tejada's complaint against Benavides came almost

21

two years later on May 28, 2009.  (See Dkt. # 16, Ex. B-1 at 2.)  It strains credulity

to think that TAB would equate Guzman kissing Benavides on the cheek and

Benavides' harassment of Tejada—two entirely independent events separated by

nearly two years—and conclude that Benavides was retaliating against Tejada.

        Tejada alternatively purports to offer "direct evidence" that TAB

supervisors knew of Benavides' retaliation against Tejada for reporting Guzman.

(Obj. at 4.)  Tejada states, "TAB admitted to being aware that [she] was

complaining about Benavides retaliating against her for Guzman's termination."

(Id. (citing Randall Dep. 71:13–74:5))   But the cited portion of Randall's

deposition does not demonstrate that TAB admitted to knowledge of such

retaliation.  On the contrary, Randall only testifies that she was aware that

Benavides confronted Tejada—not that such a confrontation had anything to do

with Tejada's complaint against Guzman.

        Tejada next points to another passage in Randall's deposition to

further argue that TAB knew that Benavides was harassing Tejada because of her

complaints against Guzman.  (Obj. at 7 (citing Randall Dep. 68:17–20, 70:19–24,

71:13–74:5, 85:24–86:11, 93:10–17).)  There, Randall discusses her familiarity

with the May 28, 2009 notes of Tim Gates, Senior Production Manager, wherein

he describes a conversation he had with Tejada after she and Benavides had an

altercation:

22

I immediately spoke with Maria [Tejada] to begin an investigation to understand from her perspective what had occurred. She stated that just before the second break in the afternoon, she was talking to Andy about her roommate. She then stated that Clara [Benavides] felt she was talking about her and became upset and threatened at first to report the both of them (to whom it was unclear) and then told Maria that if she wanted to resolve this, "let's clock out now and step outside" to settle their differences. Maria also stated that Clara also threatened to beat her up if she sees her around town, and <u>continued to point out that she (Maria) was the reason that Sal Guzman was no longer employed here</u>. Maria also said that Clara claimed that it is not her fault Maria doesn't understand how to perform certain tasks in the binder department. Maria said these differences between her and Clara go back a couple of years.

(<u>See</u> Dkt. # 16, Ex. B-1 at 2 (emphasis added))

However, yet again, neither Randall's deposition testimony, nor Gates' notes demonstrate that TAB was on notice of Benavides' alleged retaliation and failed to take remedial action. First, this entire letter is replete with hearsay. In effect, Tejada hopes to memorialize her hearsay statements regarding what Benavides said into a report by Gates and then use such statements to affirmatively prove that Benavides retaliated against her. Second, even assuming that Benavides was retaliating against Tejada, Gates' report indicates that he took corrective action:

I then called Clara into the office. . . . I approached Clara about these accusations made by 2 other co-workers, which she at first denied, but later admitted that she did ask Maria to clock out and step outside. At first, she did not feel that this comment was a problem, but later understood that a message like this creates a threatening presence in the work place. She said that she would not threaten employees

23

> anymore.  She also stated that a few weeks ago Maria had called her
> the "B**ch" word, and that she was observed Maria moving a table in
> the department to intentionally trip up Lionel DeLeon after Maria
> overheard a conversation that the table needed to be moved to a
> certain location to prevent Lionel from tripping over it.  Clara also
> states that she feels Maria is jealous of her because of what she is
> paid.  <u>I stated to Clara that we need to maintain a professional
> workplace and that we cannot threaten other employees regardless of
> the situation, and that she should have immediately reported any
> differences to Ed, Corrine, myself, or Jerry before taking actions into
> her own hands.</u>

(<u>Id.</u> (emphasis added))  Tejada ignores the steps Gates took to initiate corrective

action with Benavides and instead argues that because <u>Randall</u> did not take

corrective action, "TAB took no remedial action."  (Obj. at 4.)  However, Randall

explained that Gates, a supervisor himself, "was handling this one" and she "didn't

see any reason to jump in at that time."  (Randall Dep. 69:6–8.)  Tejada has not

shown an issue of material fact that TAB knew or should have known about

Benavides retaliation and failed to take corrective action.

    In sum, the Magistrate Judge properly concluded that Tejada fails to

state a prima facie case for hostile work environment retaliation because she

cannot show a causal connection between any harassment and her complaints

against Guzman, that the harassment was "materially adverse," and that TAB knew

of the harassment, but failed to take remedial steps.

II.     Constructive Discharge Claim

    A.     Time Barred

       The Magistrate Judge found that Tejada's constructive-discharge

claim was time barred because the majority of the actions she complained about

took place more than 300 days before she filed her EEOC charge on March 12,

2012 in violation of 42 U.S.C. § 2000e-5(e).  (R&R at 13–15 (relying on 42 U.S.C.

§ 2000e–5(e); <u>Mennor v. Fort Hood Nat'l Bank</u>, 829 F.2d 553, 554 (5th Cir.

1987)).)  He noted that because Tejada filed the charge on March 12, 2012, any

complained-of employment actions that occurred before May 6, 2011—300 days

earlier—would be time barred.  (<u>Id.</u> at 14.)  He also noted that Tejada testified that

she felt compelled to resign because of verbal abuse, threats, name calling, and two

meetings with Mayfield at which she alleges he made veiled threats by suggesting

that what happened to Guzman could happen to her.  (<u>Id.</u>)  He found that based off

of Tejada's own deposition testimony, the second meeting Tejada complained of

with Mayfield took place in September 2010—making her EEOC charge nearly a

year outside of the limitations period.  (<u>Id.</u> at 14–15.)

       Tejada objects to the Magistrate Judge's finding that Tejada's last

meeting with Mayfield occurred in August 2010.  (Obj. at 10.)  She posits that her

response, surreply, and evidence contain multiple references, arguments, and

inferences explaining the evidentiary basis for Tejada's deposition inaccurately

25

estimating the number of years.  (Id.)  Accordingly, Tejada maintains that the second meeting occurred May 23, 2011.

However, the Magistrate Judge properly considered Tejada's explanation for why her deposition testimony conflicted with her later pleadings to the Court.  He found that her explanation that the dates she provided in her deposition and in her EEOC charge were only "approximate" to be unreasonable. (See R&R at 16 ("The claim that the dates stated in her deposition were 'approximate' fails to explain the difference from her Declaration testimony, as September 2010 is not proximate to May 2011, but rather is eight months away.").) Because Tejada's explanation lacked credulity, the Magistrate Judge disregarded her Declaration averring that the second meeting occurred on May 23, 2011.  The Court agrees with the Magistrate Judge's assessment and thereby disregards Tejada's Declaration.  Based on Tejada's deposition testimony alone, the meetings with Mayfield would have taken place at the latest in September 2010—more than 300 days before filing her charge with the EEOC.  Therefore, Tejada's constructive discharge claim is time barred.

B.    Prima Facie Case

Even though the Magistrate Judge found that Tejada's constructive discharge claim was time barred, he nevertheless engaged in an analysis to determine whether she plead sufficient facts to establish a prima facie case for

constructive discharge.  (R&R at 17.)  He found that all of the behavior Tejada

complained of came exclusively from coworkers and that "[t]he rude behavior of

coworkers, and even supervisors, cannot support a constructive discharge claim,

without the explicit support or approval of the employer."  (Id.)  Additionally to

the extent that Tejada complained of the two meetings with Mayfield, a supervisor,

these meetings were also insufficient to support a constructive discharge claim

because even interpreting Mayfield's reference to Guzman's termination as a

threat, the threat was not actionable because it was based on a legitimate concern

about Tejada's harassment of a co-employee on the basis of race.  (Id. at 18.)  He

concluded that "[c]onsidering the summary judgment evidence in the light most

favorable to Tejada, a reasonable employee in Tejada's position would not have

felt compelled to resign."  (Id.)

Tejada only objects to the Magistrate Judge's finding that "there is no

evidence that the alleged behavior of Tejada's coworkers was in any way

motivated by her employer."  (Obj. at 11.)  She argues that she had presented

"multiple pieces of evidence to show that TAB management was not only

complicit in the harassment of her but was encouraging it."  (Id. at 12.)

The Court rejects Tejada's Objection because first, an employee fails

to state a constructive discharge claim solely because an employer was complicit in

any harassment.  In the Fifth Circuit, "a constructive discharge exists only when

the employer 'deliberately' makes an employee's working conditions so intolerable that the employee is forced to resign." <u>Lewis v. Waste Mgmt. of Miss., Inc.</u>, 148 F. Supp. 2d 726, 733–34 (S.D. Miss. 2001) (citing <u>Dornhecker v. Malibu Grand Prix Corp.</u>, 828 F.2d 307, 310 (5th Cir. 1987)); <u>see also</u> <u>Ward v. Bechtel Corp.</u>, 102 F.3d 199, 202 (5th Cir. 1997) (emphasis added) (holding that to establish a constructive discharge, a plaintiff "must offer evidence that <u>the employer made</u> the employee's working environment so intolerable that a reasonable employee would feel compelled to resign" (quoting <u>Barrow v. New Orleans S.S. Ass'n.</u>, 10 F.3d 292, 297 (5th Cir. 1994))).  Accordingly, Tejada's contentions that TAB was "complicit" in her harassment are not actionable.

Tejada's allegations that TAB "encouraged" her retaliatory harassment are unsupported in the record and are without merit.  She cites to Portales' Affidavit and a handwritten statement by Johnson, two of her coworkers at TAB, as well as her own Declaration.  (Obj. at 12 n.9.)  Portales' Affidavit recounts a conversation he had with Mayfield where Mayfield told him, "Be careful who you hang around with or you're going to get in trouble."  (Portales Aff. at 2.)  Likewise, Johnson describes an encounter with Mayfield, wherein Mayfield says in a determined tone to "stay away from trouble," thereby implying that Tejada is "trouble."  (Dkt. # 19, Ex. 30 at 2.)  Similarly, Tejada's Declaration suggests that after Ricardo Pineda, one of her coworkers, had a meeting with

Mayfield, he stopped speaking to her.  (Tejada Decl. ¶ 18.)  Mayfield's statements

equating Tejada with "trouble" fail to demonstrate that TAB "encouraged

retaliatory harassment."  In fact, none of the references to Tejada being "trouble"

have anything to do with her protected activity.  Moreover, the "trouble"

references certainly fail to meet the threshold burden of a prima facie case (i.e.,

that a reasonable person would have felt compelled to resign under the same

circumstances).  Again, this category of activity "fall[s] into the category of 'petty

slights, minor annoyances, and simple lack of good manners' that employees

regularly encounter in the workplace, and which the Supreme Court has recognized

are not actionable retaliatory conduct."  Aryain, 534 F.3d at 485 (quoting White,

548 U.S. at 68).

<u>CONCLUSION</u>

For the foregoing, the Court **DENIES** Plaintiff's Objections to the

Magistrate Judge's Report and Recommendation and **GRANTS** Defendant's

Motion for Summary Judgment.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, August 7, 2014.

_____

David Alan Ezra
Senior United States Distict Judge

29